**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FREDDY J. BURTON and JAN PAUL KOCH, ESQ., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>INFINITY CAPITAL MANAGEMENT, et al., )<br>)<br>Defendants. )<br>)<br>_____ | 2:11-cv-1129-RCJ-PAL<br><br>**ORDER** |

Currently before the Court is Defendant Salvatore Gugino's converted Motion for Summary Judgment (#20) and Defendant Judge Ronald Israel's converted Motion for Summary Judgment (#28). The Court heard oral argument on February 6, 2012.

**BACKGROUND**

**I.  Amended Complaint**

In September 2011, Plaintiffs Freddy J. Burton and Jan Paul Koch, Esq. (collectively "Plaintiffs") filed an amended complaint in this Court against Infinity Capital Management, Anne Pantelas, Salvatore Gugino, and Ronald Israel. (Amended Compl. (#9) at 1). The complaint alleged the following. In April 2006, Burton was struck by an automobile while riding his bicycle. (*Id.* at 3). Burton was seriously injured and incurred medical bills and loans in the amount of $271,101.87. (*Id.*). Burton retained attorney Koch. (*Id.*). Burton granted certain creditors, including Valley Hospital Medical Center, liens on his personal injury claim. (*Id.* at 3-4). Valley Hospital sold its account receivable from Burton to Infinity Capital Management. (*Id.* at 4). Infinity asserts a $123,612.81 lien on Burton's personal injury claim. (*Id.*). In March 2010, Koch settled Burton's personal injury claim for $185,000. (*Id.*).

The complaint alleged that, on March 11, 2010, pursuant to the terms of the contingency fee agreement between Burton and Koch, all of the settlement funds were placed in Koch's client trust fund account. (*Id.*). Koch paid himself $61,050.00 as an attorney fee and reimbursed himself $3,711.19 for costs, leaving Burton with a net settlement of $120,238.81. (*Id.*). Koch recommended that Burton declare bankruptcy and hire bankruptcy attorney David M. Crosby. (*Id.*). Pursuant to Nevada Revised Statute § 21.090(1)(u), Burton would be able retain $16,150 as a personal injury settlement exemption if he declared bankruptcy. (*Id.*). On March 11, 2010, Koch wrote Crosby a check from the client trust account in the amount of $1,698 to commence the filing of Burton's bankruptcy petition. (*Id.*). On May 5, 2010, Koch wrote a check from the client trust account in the amount of $14,452 to Burton for the full benefit of his personal injury settlement exemption. (*Id.*). After making the referenced payments and exemption, Burton had $104,088.81 left of his settlement. (*Id.* at 5).

The complaint alleged that, in March 2010, Nancy Allf had represented Infinity. (*Id.*). She told Koch that a state interpleader action would resolve the interests of the lien holders more quickly than the bankruptcy court. (*Id.*). In May 2010, Infinity filed a lawsuit against all other similarly-situated lien holders making a claim upon Burton's personal injury settlement funds in the Eighth Judicial District Court in Clark County, Nevada ("state interpleader case"). (*Id.*). Neither Burton nor Koch were named as defendants in the state interpleader case. (*Id.* at 5-6). In August 2010, Gugino had been substituted as Infinity's attorney of record. (*Id.* at 6). Pantelas was the president of Infinity. (*Id.* at 2). Pantelas was liable for the acts of Gugino because Gugino acted as her agent. (*Id.* at 6).

The complaint alleged that, on March 24, 2011, Crosby filed Burton's bankruptcy petition in the U.S. Bankruptcy Court for the District of Nevada. (*Id.*). Ronald Israel ("Judge Israel") was the state court judge assigned to the state interpleader case. (*Id.*). At an unspecified time, Judge Israel's assistant called Koch to inform him that Judge Israel requested Koch's attendance at the status check in the state interpleader case to be held on March 28, 2011. (*Id.* at 7). On March 28, 2011, Koch appeared on behalf of Burton in front of Judge Israel. (*Id.*). Koch informed Judge Israel, Gugino, and others that he would be

2

depositing the remaining funds of the Burton's personal injury settlement with the bankruptcy trustee and not with the Clark County Court Clerk. (*Id.*). After Koch informed Judge Israel that Burton had filed for bankruptcy, Judge Israel made collection attempts on behalf of Infinity in the state interpleader case in violation of the automatic stay. (*Id.* at 8). At that same hearing, Judge Israel questioned Koch as to why he had not interpled all of the funds that Burton had received for his settlement to the court clerk as required by *Michel v. Eighth Jud. Dist. Court ex rel. County of Clark*, 17 P.3d 1003 (Nev. 2001). (*Id.* at 9). Judge Israel ordered a status check on June 6, 2011 regarding the status of the automatic stay. (*Id.*).

The complaint alleged that, on May 24, 2011, Koch received a letter from the federal bankruptcy trustee, Joseph B. Atkins, seeking the collection of Burton's assets. (*Id.*). On May 26, 2011, Koch mailed Atkins the $104,088.81 held in Burton's client trust account. (*Id.* at 10). On June 6, 2011, Judge Israel held a status check on the state interpleader case. (*Id.*). Koch did not attend the status check. (*Id.* at 11). Judge Israel ordered Gugino to draft an order to show cause to be served on Koch. (*Id.*). That same day, Judge Israel entered a minute order that scheduled a status check for July 11, 2011 and ordered all parties, including Koch, to appear. (*Id.* at 12). That same day, Gugino sent Koch a copy of the proposed order to show cause. (*Id.* at 11). On June 7, 2011, Koch responded to Gugino by informing him that he should file a proof of claim in bankruptcy court and that he would file the instant lawsuit if Gugino continued to violate the automatic stay. (*Id.* at 13). Koch also called Gugino and told him that the proposed order violated the automatic stay. (*Id.*). Gugino allegedly asked Koch if "he was ready to be held in contempt." (*Id.*). Koch then filed this lawsuit. (*Id.*). Koch sent a copy of the original complaint to Defendants. (*Id.*). Koch did not attend the July 11, 2011, status check. (*Id.* at 14). The minutes for the July 11, 2011, status check stated "Court noted this case will be moving to Federal Court. Conference at the bench. COURT ORDERED, Matter OFF CALENDAR." (*Id.* at 15).

The complaint alleged three causes of action. (*Id.* at 17). In the first cause of action, Plaintiffs alleged, pursuant to 42 U.S.C. § 1983, that Judge Israel had deprived them of their due process rights guaranteed by the Fourteenth Amendment and "of their right to be free

from efforts to collect Burton's personal injury settlement proceeds in violation of federal automatic stay provisions of 11 U.S.C. § 362(a) for which [Plaintiffs] may seek declaratory relief and damages pursuant to 42 U.S.C. § 1983 and attorney's fees and costs pursuant to 42 U.S.C. § 1988." (*Id.*). Plaintiffs sought declaratory relief that Koch had handled the settlement funds correctly and that Judge Israel lacked jurisdiction over Plaintiffs in the state interpleader case. (*Id.* at 18-19). Plaintiffs sought attorneys' fees and costs, pursuant to § 1988, from Judge Israel. (*Id.* at 19).

In the second cause of action, Plaintiffs alleged that all Defendants willfully violated the automatic stay provision of 11 U.S.C. § 362(a) and caused Plaintiffs to each incur actual damages of $1,000 and attorney's fees and costs in an amount in excess of $10,000. (*Id.*).

In the third cause of action, Plaintiffs alleged that Gugino had violated the Fair Debt Collection Practices Act. (*Id.* at 20). However, Plaintiffs voluntarily withdrew this cause of action in their opposition to Gugino's motion to dismiss. (Opp'n to Mot. to Dismiss (#25) at 30).

## II.   Exhibits[1]

On May 3, 2010, Infinity filed a complaint in interpleader with the Eighth Judicial District. (Interpleader Compl. (#25-1) at 28). Neither Koch nor Burton were named in the action. (*See id.*). On January 27, 2011, Gugino filed a substitution of attorney for Infinity. (Substitution of Att'y (#21-1) at 2).

On March 28, 2011, Judge Israel held a hearing in the state interpleader case. (Transcript (#21-2) at 2). Gugino appeared for Infinity, Koch appeared for Burton, and Steven Baker appeared for one of the defendants in that case. (*Id.* at 3-4). At the hearing, Judge Israel acknowledged Koch and stated, "Yes, Mr. Koch. I asked that you be present. I guess the first question I have is why didn't you follow *Michel*? The *Michel* case . . . Which requires you to interplead the entire amount and then ask for your attorney's fees out of that and proceed with the other." (*Id.* at 4). The following discussion then took place:

---

[1] Gugino attached various exhibits outside of the pleadings in support of his motion to dismiss. (*See* App'x (#21)). Plaintiffs attached various exhibits outside of the pleadings in response to Gugino's motion to dismiss. (*See* Opp'n to Mot. to Dismiss (#25-1, 25-2, 25-3)).

4

> Mr. Baker: We've been told that Mr. Burton who was the plaintiff in the underlying lawsuit just declared bankruptcy and there was some talk among counsel as to whether or not that bankruptcy actually stays the action when he's not a proper party or actually a party at all to the action except as a–well, he's not even a defendant in the interpleader. So this–
>
> The Court: Well and if anything he would be the plaintiff in interpleader. He should be doing this. So my question, again, is why didn't you follow *Michel*?
>
> Mr. Koch: I'm not sure–Judge, I'm not sure I understand your question.
>
> The Court: Okay, the *Michel* case says that you take the entire proceeds from a personal injury settlement, if there . . . in this case, there's not enough to go around, you interplead that in court including your attorney's fees . . . .
>
> . . .
>
> Mr. Koch: Here's what happened, Your Honor. Mr. Burton was going to file a bankruptcy and in fact he has filed a bankruptcy. He filed last week.

(*Id.* at 5).

After some discussion, Judge Israel stated, "If the plaintiff in the personal injury case is now–has now filed bankruptcy, then they may in fact, well, this is certainly an asset and I don't know bankruptcy court may want to handle that, but for now, I think you absolutely have to start by following the *Michel* rules and interpleading the entire amount." (*Id.* at 6). The following discussion then took place:

> Mr. Koch: I'm going to pay the money over to the bankruptcy court and they're going to give it to everybody that's entitled to their money.
>
> Mr. Gugino: But, Your Honor, we might–
>
> The Court: Yeah, but, you still–then you're still not complying with *Michel* in any which way by keeping the whatever it is $60,000 and dispersing it or taking it as attorney's fees. . . .
>
> Mr. Baker: Your Honor, this–I don't–this doesn't even feel like an interpleader action because the plaintiff in interpleader isn't a party.
>
> The Court: Well, that's–that's my point.
>
> Mr. Baker: But now that the plaintiff has filed bankruptcy, I don't think that you can amend the caption to include him as the proper plaintiff in interpleader because–
>
> Mr. Gugino: That's the problem, Your Honor . . . I think we have to clear up the federal situation so that we can come back and do something here.
>
> Mr. Koch: That's what we've been discussing, Judge.

(*Id.* at 7).

Baker stated he was unsure whether the bankruptcy court could stay the interpleader case when a non-party to the interpleader filed for bankruptcy. (*Id.* at 8). Baker raised concerns that the instant interpleader action was not a proper interpleader action and did not

5

want the case to be dismissed for failure to comply with Rule 16.1. (*Id.*). Baker requested that Judge Israel order a stay in the state interpleader case. (*Id.*).

Gugino raised his concerns with going forward in the instant case. Gugino stated the following:

> Well, Your Honor, even if these parties . . . are not involved in–in that litigation and that this–this isn't stayed, the corpus of–of what we're seeking is. I mean, they have–they have the right to the possession of that money until such time as we're able to get it out of the bankruptcy court. And–and so I–I worry about what would happen if we, you know, if we start going forward and we start entering orders and doing things.

(*Id.* at 9). Judge Israel then decided to stay the case for 60 days and have the parties report back about the stay and what was taking place in bankruptcy court on June 6, 2011. (*Id.* at 9-10).

On June 3, 2011, Gugino sent all parties to the state interpleader action and Koch, a letter with a copy of the minutes from the March hearing and an update in the bankruptcy case. (Gugino June 3rd Ltr (#21-2) at 13). The letter informed the parties that Koch had deposited $104,088.81 with the bankruptcy trustee. (*Id.*). The letter stated that Koch had advised Gugino that, "out of the $185,000.00 personal injury settlement in the case, [Koch had] paid himself $61,050.00 and also paid Freddy Joe Burton $16,500.00 pursuant to NRS 21.090." (*Id.*). The letter stated that Gugino had spoken to the bankruptcy trustee, Joseph Atkins, who advised that he had no problem with the interpleader parties coming up with a stipulated agreement to divide the sum transferred by Koch, but that Atkins had to calculate his expenses and fees first. (*Id.* at 14).

At the June 6, 2011, status check regarding the stay, Gugino handed Judge Israel his June 3rd letter and informed the Court that Koch had given the remaining funds to the bankruptcy trustee. (Transcript (#21-3) at 7-8). Koch did not appear. (*See id.* at 9). Judge Israel stated that, "I ordered Mr. Koch to place all the funds in here." (*Id.*). Baker and Gugino responded that Koch did not do that. (*Id.*). Gugino stated, "That's why I'm reporting this to you, Your Honor." (*Id.*). Judge Israel stated, "Okay. Then I'm going to issue an order to show cause. I want Mr. Koch to appear and show–tell us why he didn't deposit his attorney's fees

6

into–pursuant to *Michel* . . . 60 days and I told him to follow the *Michel* rules and place–interplead all the funds including his attorney's fees and he did not so I'm issuing an order to show cause." (*Id.*). Judge Israel stated, "I want [Koch] to personally appear and tell us why he hasn't otherwise, I'll hold him in contempt." (*Id.* at 10). The following conversation then took place:

> The Court: who wants to prepare the order?
> Mr. Gugino: What day?
> The Court: Mr. Gugino?
> Mr. Gugino: I'll prepare it, Your Honor.
> The Court: Thirty days.
> The Clerk: Thirty days, we'll set it for July 11th.

(*Id.* at 11).

On that same day, June 6th, Gugino drafted a proposed Order to Show Cause and sent it to all of interpleader parties and Koch. (Proposed Order Ltr (#21-3) at 14). The letter stated that, unless Gugino heard from them in the contrary, he would assume it met with their approval and would submit it to the court for the judge's signature. (*Id.*). The proposed order in part ordered Koch to appear on July 11, 2011 "to explain to [the court] why he should not be held in contempt for failure to comply with *Michel* . . . as directed by the Court at the March 28, 2011 hearing." (*Id.* at 16).

On June 6th, Koch sent Gugino a fax objecting to the order and stating that, *inter alia*, "You are violating the automatic stay provisions of 11 U.S.C. § 362." (June 6th Koch Fax (#21-3) at 18). On June 7th, Koch sent Gugino a fax stating that

> the complaint is now 90% complete. You have now wasted 15 hours of my practice (3 hours yesterday and 12 hours today). I'll be back in here at 6AM tomorrow, as I was today, protecting Mr. Burton's rights. By the way: I made a mistake! My retainer does NOT call for $400.00 an hour, as I previously mentioned. It states an hourly rate of four hundred fifty ($450.00) dollars an hour.

(June 7th Koch Fax (#21-4) at 2). The fax included a four-page letter to Gugino that stated that the automatic stay prevented actions and proceedings directed toward property of the bankruptcy estate and included personal attacks on Gugino's competency. (*Id.* at 3-6). The fax also included Koch's draft complaint which Koch stated he would file if he became aware that any further action in the state interpleader case was being pursued by anyone. (*Id.* at 4,

7

7-13).

On June 9th, Gugino responded to Koch's faxes and stated the following:

> First, let me make it clear that you did not attend the June 6, 2011 status check before Judge Israel, even though you were aware of the hearing date. Had you been present, all of this might have been avoided. At the hearing, I presented the Court with my June 3, 2011 letter and attachments, which had been previously sent to you and the attorneys involved in this litigation. It was my expectation that we would be going forward in the Bankruptcy Court under some sort of stipulation and order. However, at the hearing, Judge Israel ordered that an Order To Show Cause be issued against you, and he then directed me to prepare the Order. This was not my idea, nor did I recommend it to the Court. After preparing a draft of the proposed Order, I sent it to your attention for your review. Had you called me upon receipt, you could have avoided incurring the hours you claim to have spent preparing a class action complaint against my client, her company, myself and Judges Israel and Allf.

(June 9th Gugino Ltr (#21-4) at 15). Gugino also included the minute order from Judge Israel's court which stated "matter re-set from a show cause hearing to a status check regarding bankruptcy/interpleader" for July 11, 2011. (*Id.* at 15, 18). The minutes also directed all parties, including Koch, to appear on July 11th and advise the court of: (1) the bankruptcy; (2) why the bankruptcy could effect and stay these proceedings, since Burton was not a party to this action; (3) why Koch should interplead the entire proceeds of the settlement per the *Michel* case into state court immediately; (4) status on lifting the stay. (*Id.* at 18).

On that same day, June 9th, Koch responded to Gugino stating "in response to your 6-9-11 letter . . . Attached here . . . please find the rough draft of the Federal Lawsuit that I am filing." (June 9th Koch Fax (#21-5) at 2).

On July 7, 2011, Koch sent Gugino a fax stating, "Don't know why you never responded to my last entreaty. Guess it matters not. It's been filed. Here's a copy. See ya in Court." (July 7th Koch Fax (#21-6) at 12). On July 8, 2011, Koch sent Gugino a fax stating, "FYI I sent courtesy copy to Judge Israel this AM." (July 8th Koch Fax (#21-6) at 14).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the

nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should only look to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). If the parties present "matters outside of the pleadings" that are not excluded by the court, the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d).

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Pursuant to Fed.R.Civ.P. 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "The mere existence of a

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## DISCUSSION

**I.    Gugino's Motion to Dismiss (Converted Motion for Summary Judgment) (#20)**[2]

Gugino argues that he is shielded by the doctrine of absolute judicial immunity because he prepared the proposed written order to show cause under Judge Israel's direction. (Mot. to Dismiss (#20) at 19). Gugino asserts that the facts demonstrate that he did not request this order and did not argue that Koch should be forced to comply with *Michel*. (*Id.*). Gugino argues that Judge Israel ordered the order to show cause *sua sponte* and then directed Gugino to prepare the order. (*Id.*). He asserts that absolute judicial immunity shields those who perform functions closely associated with the judicial process which, in this case, includes drafting an order on behalf of a judge. (*Id.* at 21-22).

In response, Plaintiffs assert that Judge Israel has no judicial immunity from damages because his acts were done in the clear absence of subject matter jurisdiction. (Opp'n to Mot. to Dismiss (#25) at 15). Plaintiffs contend that, if Judge Israel does not have judicial immunity, then Gugino, Infinity, and Pantelas have no judicial immunity. (*Id.* at 19). Plaintiffs assert that Infinity and Pantelas are responsible for the acts of Gugino through the doctrine of *respondeat superior*. (*Id.*). Plaintiffs allege that Gugino committed additional acts to violate the automatic stay and did more than just follow Judge Israel's orders. (*Id.* at 24). Plaintiffs allege that Gugino violated the automatic stay by his actions at the hearings, by copying Koch on the June 3rd letter, by requesting from Koch an accounting of all funds from Burton's personal

---

[2] Defendants Infinity Capital Management and Anne Pantelas file a joinder to Gugino's motion to dismiss and his reply to the motion to dismiss. (Joinders (#24, 27)).

injury settlement, drafting the proposed order to show cause, and by copying Koch on the proposed order. (*Id.* at 25-27).

In reply, Gugino asserts that there is a difference between acting in "excess" of jurisdiction and acting in "clear absence of all jurisdiction." (Reply to Mot. to Dismiss (#26) at 3). Gugino argues that Judge Israel did not act in clear absence of all jurisdiction and, thus is entitled to judicial immunity. (*Id.*). Gugino contends that, even if Judge Israel did act in clear absence of all jurisdiction, he did not and is entitled to judicial immunity. (*Id.* at 12).

Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition immediately gives rise to an automatic stay. The stay applies to block or freeze most judicial actions against a debtor. 11 U.S.C. § 362(a)(1). An "individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

The automatic stay "imposes on non-debtor parties an affirmative duty of compliance." *Sternberg v. Johnston*, 595 F.3d 937, 943 (9th Cir. 2010). In order for a party to comply with the "affirmative duty" under the automatic stay, a non-debtor party must do what he can to relieve the violation. *Id.* at 945. In *Sternberg*, the Ninth Circuit held that a non-debtor party could not be liable for anything he or she did before learning of the bankruptcy and could not be held responsible for a court's order that violated the stay. *Id.* at 944. However, the Ninth Circuit held that, within a reasonable time after the court's order, "the law required [the non-debtor party] to take corrective action." *Id.* The Ninth Circuit held that, at a minimum, the non-debtor party in *Sternberg* "had an obligation to alert the state appellate court to the conflicts between the order and the automatic stay." *Id.* at 945. By not doing so, the non-debtor party willfully violated the automatic stay. *Id.*

Judicial immunity is a "'sweeping form of immunity' for acts performed by judges that relate to the 'judicial process.'" *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002). "This absolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives . . . or when the exercise of judicial authority is 'flawed by the commission of grave procedural errors.'" *Id.* at 947.

11

"Judicial immunity discourages collateral attacks on final judgments through civil suits, and thus promotes the use of 'appellate procedures as the standard system for correcting judicial error.'" *Id.*

Absolute judicial immunity "extends to nonjudicial officers for 'all claims relating to the exercise of judicial functions.'" *Id.* "[A]bsolute quasi-judicial immunity will be extended to nonjudicial officers only if they perform official duties that are functionally comparable to those of judges, i.e., duties that involve the exercise of discretion in resolving disputes." *Id.* at 948. "Under this approach, to determine whether a nonjudicial officer is entitled to absolute quasi-judicial immunity, courts must look to the nature of the function performed and not to the identity of the actor performing it." *Id.*

In this case, Gugino is liable for willfully violating the automatic stay but only from a certain point on. First, Gugino did not violate the automatic stay at the March 28th hearing. At that hearing, Koch notified the parties that Burton had filed for bankruptcy. As demonstrated by the hearing transcript, the parties were unsure of how to proceed with the state interpleader case in light of the stay and the court issued a 60-day stay.

Second, the June 3rd letter did not violate the automatic stay. Gugino prepared the letter for the status check scheduled in the state interpleader case. Additionally, the letter demonstrates Gugino's attempt to resolve the bankruptcy and interpleader issues with the bankruptcy trustee.

Third, the order to show cause did violate the automatic stay because it was an attempt to proceed with a case involving the debtor's settlement funds after the debtor had filed for bankruptcy. The Court finds that Gugino is not entitled to quasi-judicial immunity because Gugino volunteered to prepare the order in direct violation of the stay. Gugino had a duty to not prepare or present the order.

Additionally, Gugino is liable for violating the automatic stay because he had an affirmative duty to do what he could do to relieve the violation. Gugino had, at a minimum, an affirmative duty "to alert the state appellate court to the conflicts between the order and the automatic stay." *See Sternberg*, 595 F.3d at 945. By not doing so, he violated the automatic

stay. As such, the Court denies Gugino's motion for summary judgment (#20) on the second cause of action.

Pursuant to 11 U.S.C. § 362(k)(1), Plaintiffs may be entitled to "actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages" for the willful violation of the stay. However, because this motion was originally a motion to dismiss, neither party has addressed this issue. As discussed at oral argument, the Court finds that damages are limited to attorney's fees and costs in preparing the complaint and bringing it to court.

## II. Judge Israel's Motion to Dismiss (Converted Motion for Summary Judgment) (#28)

Judge Israel argues that he did not violate Plaintiffs' due process rights because there has been no deprivation or injury. (Mot. to Dismiss (#28) at 4). Specifically, Judge Israel asserts that no money had been deposited into the state interpleader action, there had been no hearing to show cause, and no sanctions had been issued. (*Id.*). Judge Israel asserts that absolute judicial immunity applies. (*Id.* at 5). Judge Israel argues that Plaintiffs are barred from seeking declaratory relief against him because there was no due process violation. (*Id.* at 5-6). Judge Israel also argues that Plaintiffs lack standing to bring the instant lawsuit because they have not suffered any concrete or particularized injury. (*Id.* at 6).

In response, Plaintiffs argue that Judge Israel has no judicial immunity from declaratory relief or from being ordered to pay attorney's fees and costs pursuant to 42 U.S.C. § 1988. (Opp'n to Mot. to Dismiss (#33) at 15). Plaintiffs contend that Judge Israel acted in clear absence of all jurisdiction over Burton and Koch because they were never named as parties in the state interpleader case, because Nev. R. of Civ. P. 22 did not allow Infinity jurisdiction to file the state interpleader case, and because the bankruptcy filing divested the state court of all jurisdiction over the bankruptcy matters. (*Id.* at 18). Plaintiffs argue that Judge Israel violated the automatic stay giving them causes of action pursuant to 42 U.S.C. § 1983, 1988 and 11 U.S.C. § 362(k)(1). (*Id.* at 23).

The Supreme Court has held that a judge will not be deprived of immunity "because

the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978). "A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." *Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1389 (9th Cir. 1987). A judge who has acted in "excess of his jurisdiction" is immune from liability. *Stump*, 435 U.S. at 357 n.7, 98 S.Ct. at 1105.

The Supreme Court has illustrated the distinction between an act in the clear absence of jurisdiction and an act in excess of jurisdiction with this example:

> if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Id.*

In this case, Judge Israel's actions are immune from liability because he acted in excess of his jurisdiction, but did not act in clear absence of jurisdiction. The Nevada Constitution provides that state district courts have "original jurisdiction in all cases excluded by law from the original jurisdiction of justices' courts." Nev. Const. art. 6, § 6(1). Justice courts do not have jurisdiction in cases where the amount in controversy exceeds $10,000. Nev. Rev. Stat. § 4.370(1). Because the state interpleader involved an amount exceeding $10,000, Judge Israel had original jurisdiction over the state interpleader case and, thus, did not act in clear absence of jurisdiction. Additionally, because the state interpleader case involved Burton's settlement funds, Judge Israel did not act in clear absence of jurisdiction by requesting Koch to appear at the March 28th hearing even though neither Koch nor Burton had been named as a party.

However, Judge Israel did act in excess of his jurisdiction when he attempted to continue the state interpleader case in light of the automatic stay. Judge Israel acted in excess of his jurisdiction when he attempted to require Koch to interplead the settlement funds and directed Gugino to draft an order to show cause against Koch for failing to interplead the

settlement funds. Nevertheless, immunity protects Judge Israel from acting in excess of his jurisdiction and the Court grants Judge Israel's motion for summary judgment (#28) on all causes of action.

**CONCLUSION**

For the foregoing reasons, the Court converts the motions to dismiss (#20, 28) into motions for summary judgment.

IT IS FURTHER ORDERED that Gugino's Motion for Summary Judgment (#20) is DENIED.

IT IS FURTHER ORDERED that Judge Israel's Motion for Summary Judgment (#28) is GRANTED.

DATED: This 24th day of February, 2012.

_____
United States District Judge